William C. HALE, Plaintiff-Appellant and Cross-Respondent,

v.

STOUGHTON HOSPITAL ASSOCIATION, INC.,
Defendant-Respondent
and Cross-Appellant.

[Case No. 83–1817.]

William C. HALE, Plaintiff-Appellant,

v.

Phillip J. SCHOENBECK, F.J. Schammel, Frank Nichols, David L. Nelson, V.W. Nordholm, O.A. Hermundstad, Walter D. Moritz, David Grout, Rodney K. Peterson, and Norman Gerber, Defendants-Respondents.

[Case No. 83–1823.]

Court of Appeals

*Nos. 83–1817, 83–1823. Submitted on briefs April 3, 1985.—Decided September 25, 1985.*
(Also reported in 376 N.W.2d 89.)

For the plaintiff-appellant and cross-respondent the cause was submitted on the briefs of *Claude J. Covelli*

and *Robert J. Gingras* and *Boardman, Suhr, Curry & Field,* of Madison.

For the defendants-respondents and cross-appellants the cause was submitted on the briefs of *William F. Nelson, Susan R. Steingass* and *Gary M. Young,* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For the defendants-respondents Frank Nichols, Walter D. Moritz and David Grout the cause was submitted on the brief of *Steven J. Caulum* and *Stephen O. Murray* and *Bell, Metzner & Gierhart, S.C.* of Madison.

Before Dykman, J., LaRocque, J., and Bruce F. Beilfuss, Reserve Judge.

DYKMAN, J.   William Hale appeals and Stoughton Hospital Association, Inc. cross-appeals from an order directing a new trial on the issues of liability and damages in Hales' wrongful termination action against the hospital. Hale also appeals from the judgment dismissing his action for tortious interference with contract against the president of the hospital's board of directors and doctors associated with the hospital. We affirm in part and reverse in part.

The hospital hired Hale as its administrator in January, 1961, under an "at-will" oral agreement. In 1973, the hospital revised its bylaws and Hale became the president and an officer of the hospital. The revised bylaws provided that an officer could be removed by the affirmative vote of six or more board members "whenever in [the board's] judgment the best interests of the hospital would be served thereby. . . ." The board dismissed Hale pursuant to this provision on October 24, 1973. The board's decision to terminate was made in part on the advice of doctors associated with the hospital.

A few months after his termination, Hale suffered a disabling heart attack. He commenced actions against the hospital and those individuals who recommended his

dismissal seeking lost wages and pension benefits. The trial court submitted the action against the hospital to the jury on tort and contract theories. The jury first considered a verdict question whether the hospital wrongfully terminated Hale's employment.

The parties derived this question and the accompanying instruction from the court of appeals decision in *Brockmeyer v. Dun & Bradstreet*, 109 Wis. 2d 44, 325 N.W.2d 70 (Ct. App. 1982), which imposed a duty to discharge in good faith in an employment at will contract. The jury answered this question affirmatively and did not answer a second question asking whether the hospital violated its bylaws in dismissing Hale. Shortly after the verdict's return but before entry of judgment the supreme court rejected the court of appeals' holding imposing a duty to terminate employment in good faith. *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 569, 335 N.W.2d 834, 838 (1983). The court also held that tort actions cannot be maintained for wrongful discharge. *Id.* at 576, 335 N.W.2d at 841.

The trial court concluded that it applied the wrong law and ordered a new trial on the unanswered contract claim. It also concluded that the damage question was erroneous because it did not ask the jury to determine whether the damages were a probable as well as a natural consequence of the termination. The trial court entered judgments in favor of the individual defendants on the jury's finding that they did not intentionally and improperly interfere with the employment relationship.

Hale argues that he is entitled to judgment on the verdict against the hospital notwithstanding the supreme court's decision in *Brockmeyer*. First, he argues that the hospital waived any objection to the wrongful discharge question and instruction. He also argues that the holding in *Brockmeyer* is limited to "at will" employment contracts and that an obligation of good faith is an implied condition in every definite employment

contract. He terms the employment conditions contained in the hospital's bylaws a definite employment contract. Alternatively, he argues that the hospital voluntarily undertook to refrain from a bad faith discharge by enacting its bylaws. Hale contends that the hospital's breach of this implied or express duty gave rise to a tort action for wrongful termination. Finally, Hale argues that the jury's answer to the first question is consistent with a finding that the hospital violated its bylaws governing termination.

The hospital also disputes the order for a new trial on the contract claim. It argues that a new trial is unnecessary because there is no credible evidence that it breached its bylaws in terminating Hale.[1] The hospital contends that a verdict should be directed in its favor.

We conclude that no waiver occurred and that Hale's attempts to distinguish *Brockmeyer* are unpersuasive. No tort cause of action exists for wrongful discharge based on bad faith or malicious or retaliatory conduct. Nor can the tort and contract questions be reconciled. We likewise reject the hospital's claim that no credible evidence supports a finding that the hospital violated

---

[1] The hospital does not argue on appeal that the termination provision in its bylaws is not a part of the employment contract between the parties. Bylaws are the code of rules adopted for the regulation or management of a corporation, sec. 181.02(3), Stats., and a corporation is not automatically bound by self-imposed policies regarding discharge. *Holloway v. K-Mart Corp.*, 113 Wis. 2d 143, 146, 334 N.W.2d 570, 572 (Ct. App. 1983). The hospital, however, agrees to be bound by the bylaw in this case and we deem any argument to the contrary to be abandoned. *Reiman Associates v. R/A Advertising*, 102 Wis. 2d 305, 306, n. 1, 306 N.W.2d 292, 294 (Ct. App. 1981). We note that the agreement of the parties to a contract can convert an arguably "at will" employment relationship into one that can be terminated only by adherence to company policy or employee handbooks. *Ferraro v. Koelsch*, 124 Wis. 2d 154, 167, 368 N.W.2d 666, 673 (1985); *Holloway* at 146, 334 N.W.2d at 572.

its bylaws in terminating Hale's employment. A new trial is necessary on the question of liability and we affirm that part of the trial court's order.

The damage question was not fatally defective, however. In an employment termination action, lost wages and pension benefits are foreseeable as a matter of law. The absence of "probable" from the question and instruction therefore was not prejudicial.

Finally, Hale argues that he is entitled to a new trial against the individual defendants because the trial court abused its discretion in instructing on permissible interference with contractual relations. We conclude that the instructions were not erroneous and affirm the judgments.

## WAIVER

The parties proceeded at trial under the assumption that a cause of action existed for wrongful discharge based on the exercise of bad faith or malicious or retaliatory conduct. Decisions of the court of appeals erroneously supported this view. *Brockmeyer,* 109 Wis. 2d at 46–47, 325 N.W.2d at 72; *Ward v. Frito-Lay, Inc.,* 95 Wis. 2d 372, 376–77, 290 N.W.2d 536, 537–38 (Ct. App. 1980), criticized in *Holloway v. K–Mart Corp.,* 113 Wis. 2d 143, 148, 334 N.W.2d 570, 573 (Ct. App. 1983) and Ryan, *The Status of Wrongful Discharge in Wisconsin,* 56 Wis. B. Bull., April 1983, at 22, 23. The supreme court opinion repudiating this approach was not released until after the jury returned a verdict. Before the supreme court's decision, the hospital had no reason to object to the question and was not precluded from bringing the supreme court's decision to the trial court's attention. The trial court was then bound to follow the law.

## APPLICATION OF BROCKMEYER

We reject Hale's attempt to limit *Brockmeyer's* application. The court in *Brockmeyer* was unequivocal in prohibiting tort actions for wrongful discharge. 113 Wis. 2d at 575–76, 335 N.W.2d at 841. We have already rejected an attempt to limit this aspect of *Brockmeyer* to "at will" employment contracts. *Dvorak v. Pluswood Wisconsin, Inc.,* 121 Wis. 2d 218, 219, 358 N.W.2d 544, 545 (Ct. App. 1984).

The court's refusal in *Brockmeyer* to impose a duty to terminate in good faith also applies to both "at will" and definite employment relationships. Although good faith is often called an implied condition in every contract, *Crown Life Ins. Co. v. LaBonte,* 111 Wis. 2d 26, 44, 330 N.W.2d 201, 209 (1983), the court refused to " 'subject each discharge to judicial incursions into the amorphous concept of bad faith.' " (Citation omitted.) *Brockmeyer,* 113 Wis. 2d at 569, 335 N.W.2d at 838. A good faith duty to terminate unduly restricts an employer's discretion in managing the work force. *Id.* Nor does an employment relationship involve a "fiduciary duty," which warrants a duty of good faith in other situations. *Dvorak,* 121 Wis. 2d at 220, 358 N.W.2d at 546. *Compare Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 688, 271 N.W.2d 368, 375 (1978) (fiduciary duty of the insuror toward insured). No cause of action exists for bad faith termination of an employment contract.

## RECOVERY UNDER CONTRACT

1. *Application of the Bylaw*

*Brockmeyer* does not relieve an employer of contractual obligations it has undertaken. The parties to an

employment contract may agree to limit the employer's power to terminate the employee. If the limits do not violate public policy, termination in violation of the contract's provisions will permit recovery. The recovery in all cases, however, lies in contract and not in tort. *Dvorak*, 121 Wis. 2d at 219, 358 N.W.2d at 545.

Hale argues that by enacting its bylaws, the hospital voluntarily undertook the duty presented in the wrongful termination question and instruction and that the answer to this question was consistent with a finding of breach of contract. The bylaw authorized Hale's removal whenever, in the board's judgment, the best interests of the hospital would be served.

Only the unanswered special verdict question dealt with termination pursuant to the bylaw. The question specifically asked whether the hospital had violated its bylaws. The accompanying instruction set out the termination provision and informed the jury that the board must have honestly and intelligently considered the best interests of the hospital. The wrongful termination instruction stated the elements of the cause of action the supreme court rejected in *Brockmeyer*. Although bad faith was defined as the absence of honest, intelligent consideration, the instruction did not refer to the best interests of the hospital. Instead, Hale could recover if the board recklessly disregarded his rights or interests. We cannot conclude the instruction was harmless.

Nor does the wrongful termination question and instruction adequately describe the duty that the hospital accepted in its bylaw. We agree that the bylaw creates more than a mere "at will" employment relationship. Unlike an "at will" employer, the hospital could not discharge Hale for any or even no cause. *Goff v. Massachusetts Protective Asso., Inc.*, 46 Wis. 2d 712, 716, 176 N.W.2d 576, 579 (1970). Termination must be pursuant to the bylaw, which permits termination "when it is in the hospital's best interests."

The bylaw requires an honest belief that termination is in the best interests of the hospital. The board's belief may not be feigned or a pretext for action that they believe is not in the hospital's best interest. Nothing more is required.[2] The board is the sole judge of the hospital's best interests and the court or jury may not inquire into the reasonableness of their decision or whether the board's reasons exist in fact. Hale places too much emphasis on the use of the word "judgment" in the bylaw. We will not inquire into the board's decision-making process to determine whether its decision is correct. Inquiry is limited to whether the board really believed Hale's termination was in the hospital's best interests.

## 2. *Directed Verdict*

We cannot conclude that the hospital is entitled to judgment on this issue as a matter of law. A directed verdict is improper if any credible evidence, viewed reasonably, supports a verdict contrary to the verdict that is sought. *Village of Menomonee Falls v. Michelson,* 104 Wis. 2d 137, 154, 311 N.W.2d 658, 666 (Ct. App. 1981). The hospital points to considerable evidence that the board believed Hale's termination was in the hospital's best interests. Members of the medical staff complained that Hale was not effective as a leader and administrator, and that they lost their confidence in him. Several doctors threatened to withdraw from the hospital if Hale was not removed. Members of the board also testified that Hale gave the board incomplete in-

---

[2] A "sound judgment" is not required. The trial court derived this requirement from *Beers v. Atlas Assurance Co.,* 215 Wis. 165, 177, 253 N.W. 584, 589 (1934). *Beers* involved a promise to exercise "discretion" in terminating an employee. The court in *Beers* applied the standard typically used when reviewing a trial court's discretionary acts. *Id.*

formation concerning a hospital remodeling and addition project. The board's president testified that a letter from a consulting firm raised questions about Hale's candor and led the board to consider Hale's termination.

This position, however, is contradicted by other testimony. In his deposition, the president claimed that he never saw the letter that allegedly raised his suspicions. Several doctors also testified that their dissatisfaction concerned Hale's inability to advance the hospital building project. Hale's evidence suggests, however, that the board was ultimately responsible for the building project. A jury, considering this evidence most favorably to Hale, could conclude that the board preferred Hale's termination to being honest in answering the doctors' concerns. Moreover, there is evidence that the board orchestrated the doctors' dissatisfaction. A new trial is necessary.

## DAMAGES

In the special verdict, the jury was directed to determine the sum of money that will fairly and reasonably compensate Hale for the monetary loss sustained as a "natural consequence" of the termination. The accompanying instruction reiterated this approach. This verdict question and instruction were derived from the patterned jury instruction for future damages in tort actions. *See* Wis J I—Civil 1705.

The only viable cause of action against the hospital, however, lies in contract. Like damages in tort actions, contract damages compensate the wronged party for damages that arise naturally from the wrong. *Reiman Associates v. R/A Advertising*, 102 Wis. 2d 305, 320, 306 N.W.2d 292, 300 (Ct. App. 1981). Unlike tort damages, contract damages are also limited by the concept of foreseeability. *Brockmeyer*, 113 Wis. 2d at 575, 335

N.W.2d at 841. Recovery is limited to damages reasonably supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of a breach. *Reiman Associates*, 102 Wis. 2d at 320, 306 N.W.2d at 300. The pattern jury instruction for consequential damages for breach of contract refers to the "natural and probable results of the breach." *See* Wis J I—Civil 3710. Because of the missing element, the trial court concluded that a new trial was necessary on damages.

A new trial is warranted only when an erroneous instruction is determined to be prejudicial. *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 123, 362 N.W.2d 118, 133 (1985). The test of whether an error is prejudicial is the probability that the jury was misled. *Betchkal v. Willis*, 122 Wis. 2d 419, 423, 363 N.W.2d 248, 250 (Ct. App. 1984). Given the nature of the claimed damages, we conclude that a different result would not have occurred had the jury been properly instructed. *See Helmbrecht*, 122 Wis. 2d at 123, 362 N.W.2d at 133.

Hale only sought damages for loss of wages and pension rights because of the breach. These losses usually result from the breach of an employment contract and are calculated by a standard formula. *Wassenaar v. Panos*, 111 Wis. 2d 518, 534, 331 N.W.2d 357, 365 (1983); *McDonald v. Chicago, M., St. P. & P. R.R.*, 38 Wis. 2d 526, 538, 157 N.W.2d 553, 558 (1968).

When the loss claimed is "the usual consequence of breach of the class of contracts to which this belongs, and particularly if the claim of damages is based upon the regular formula for damage in like cases, then the actual contemplation of the parties becomes unimportant." (Footnotes omitted.) McCormick, *Handbook of*

the Law of Damages, sec. 138 at 565 (1935). See also Restatement (Second) of Contracts, sec. 351 comment b. (1981) ("loss that results from a breach in the ordinary course of events is foreseeable as the probable result of the breach"). We conclude that the loss of wages and pension benefits arise in the ordinary course of the breach of an employment contract and are foreseeable as a matter of law. The trial court's failure to include "probable" in the question and instruction therefore was not prejudicial error. We reverse the order for a new trial as to damages.

### Heart Attack

Like the plaintiff in McDonald, upon establishing a breach, Hale is entitled to recover his lost wages until the time of trial and thereafter until retirement and the loss of any retirement benefits that would have inured to him under the contract. McDonald, 38 Wis. 2d at 538, 157 N.W.2d at 558. Consistent with the standard approach to damages for breach of an employment contract, the trial court properly instructed the jury on Hale's duty to mitigate his losses. Klug v. Flambeau Plastics Corp., 62 Wis. 2d 141, 155, 214 N.W.2d 281, 287 (1974). The question arises as to the effect of Hale's heart attack on his right to recover wages and pension benefits. The heart attack was allegedly totally disabling and prevented Hale from further mitigating his losses. A disabling injury that is totally independent of a prior injury will relieve a defendant of liability from the date of the subsequent injury. Victorson v. Milwaukee & Suburban Transport Corp., 70 Wis. 2d 336, 361, 234 N.W.2d 332, 344 (1975). Here, the jury found that Hale's termination was a substantial factor in producing his heart attack. This finding is supported by credible evidence.

There is no need to re-try whether the termination caused the heart attack. Dr. Anthony Richtsmeier testified about the relationship between Hale's termination and his heart attack. Richtsmeier stated that Hale's post-discharge stress was a substantial factor in causing his heart attack. Richtsmeier admitted that the actual degree of effect could not be measured, but indicated the basis for his opinion and that it was to a reasonable degree of medical probability. He also testified that Hale was permanently disabled as of February, 1974, the time of the heart attack. His opinion is not based on such speculation, conjecture, or mere possibilities that the jury's finding must be rejected. *See Merco Distg. Corp. v. Com'l. Police Alarm Co.*, 84 Wis. 2d 455, 461, 267 N.W.2d 652, 655 (1978).[3]

Nor is Richtsmeier's testimony internally inconsistent and inherently insufficient for jury consideration. *See Ianni v. Grain Dealers Mut. Ins. Co.*, 42 Wis. 2d 354, 360–61, 166 N.W.2d 148, 151 (1969). The hospital claims that, on re-examination, Richtsmeier indicated that he had no idea of the cause of Hale's heart attack. This is the hospital's interpretation of the evidence. Richtsmeier's statement can also be interpreted as referring to the lack of symptoms other than chest pain, and not to the basic causes of Hale's heart attack. This interpretation is not inconsistent with his earlier testimony. The trial court correctly left the ultimate factual determination to the jury.

We do not accept the hospital's argument that the heart attack must be foreseeable. Hale's damages were foreseeable. He had a right to recover the amount he

---

[3] On its cross-appeal, the hospital argues that Hale's expert on damages based his testimony on assumptions unsupported by the record. Our conclusion that credible evidence supports a finding of causation and permanent total disability disposes of this argument.

would have earned under the contract, subject to his reasonable efforts of mitigation. The hospital had the burden of proof to establish that Hale failed to do all that was reasonable to minimize his damages subsequent to the breach. *Sprecher v. Weston's Bar, Inc.*, 78 Wis. 2d 26, 42, 253 N.W.2d 493, 500 (1977). The hospital's actions impaired Hale's ability to mitigate his losses. The hospital, and not Hale, should bear the consequences.

If, on remand, the hospital's action is found to violate the bylaw, the hospital should not be able to benefit by its improper act. Under those circumstances, the heart attack would not cut off liability.

## INTERFERENCE WITH CONTRACT

Hale seeks a new trial against the individual defendants on his claims of tortious interference with contract. He claims that the trial court misinstructed the jury on the exceptions to tortious interference.[4] We conclude that the trial court did not abuse its discretion in instructing the jury.

Traditionally, courts specify the exceptions to the general rule concerning intentional interference with a contract in terms of a "privilege" to interfere. *Lorenz v. Dreske*, 62 Wis. 2d 273, 286, 214 N.W.2d 753, 759–60 (1974) ; *Mendelson v. Blatz Brewing Co.*, 9 Wis. 2d 487, 491, 101 N.W.2d 805, 807 (1960). The *Restatement (Second) of Torts*, sec. 766 (1979) substitutes a concept

---

[4] Although Hale appeals from the judgment entered in favor of all the individual defendants, his argument on appeal concerns only the seven defendants whose liability was determined by the jury. Hale's claims against defendants Gerber, Schoenbeck and Peterson were dismissed by the trial court at the close of the plaintiff's case. Hale has not challenged the basis for the trial court's decision, and we conclude he has abandoned his claims against Gerber, Schoenbeck and Peterson.

of "propriety" for privilege and provides that "one who 'intentionally and improperly' interferes with the performance of a contract is liable." *Liebe v. City Finance Company*, 98 Wis. 2d 10, 14, 295 N.W.2d 16, 18 (Ct. App. 1980). We have adopted sec. 766 of the *Restatement (Second) of Torts. Id.* at 14–15, 295 N.W.2d at 18–19.

The trial court used sec. 766 in instructing the jury and included two situations in which interference with an employment contract is not improper. The trial court instructed the jury that the defendants did not improperly interfere with Hale's contract rights if they gave honest advice to the board, in response to a request by the board for that advice. *See Restatement (Second) of Torts*, sec. 772 (1979). This exception is recognized in Wisconsin, *Northern Wis. Co-operative Tobacco Pool v. Bekkedal*, 182 Wis. 571, 581, 197 N.W. 936, 940 (1924), and Hale did not object to the instruction. He argues, however, that the trial court erred in not informing the jury that it could consider whether the advice was based on reasonable grounds and whether the defendants exercised reasonable diligence in ascertaining the facts behind the advice.

We need not consider whether the refused instruction was erroneous because the instruction given adequately conveys the law applicable to the facts. *State v. Higginbotham*, 110 Wis. 2d 393, 403–04, 329 N.W.2d 250, 255 (Ct. App. 1982). The jury was informed that the advice must be "honest." Honest is a term of common usage and the jury did not require further explanation to adequately perform its task of distinguishing genuine from fraudulent advice.

The trial court also instructed the jury that if the defendants, doctors with the hospital, were motivated by a desire to promote the interests of the hospital in

providing medical care, their actions were not improper interference. Hale objected to this instruction claiming that members of a hospital medical staff are not entitled to this exception.

We conclude that the instruction was proper. Courts have applied this exception when directors or stockholders of a corporation act on its behalf and contribute to a breach of contract. *Harman v. La Crosse Tribune*, 117 Wis. 2d 448, 455, 344 N.W.2d 536, 540 (Ct. App. 1984), *cert. denied,* —— U.S. ——, 105 S. Ct. 58 (1984). The relationship between a doctor and the hospital at which the doctor practices is such that the exception should also apply here. The doctor has a primary interest in preserving the hospital's interests in providing medical care. This interest must be conditionally protected from litigation. The trial court correctly informed the jury that it could consider the defendants' motives in determining whether their interference was proper. *See Id.*

*By the Court.*—Order affirmed in part and reversed in part and remanded for a new trial.