Carol Ann SCHAIDLER, Plaintiff-Appellant,

v.

MERCY MEDICAL CENTER OF OSHKOSH, INC., and John B. McAndrew, Defendants-Respondents,

Rick SEARLES, Defendant.

Court of Appeals

*No. 96–0645. Submitted on briefs December 16, 1996.—Decided March 19, 1997.*

(Also reported in 563 N.W.2d 554.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jeffrey Spitzer-Resnick* of Madison.

On behalf of defendant-respondent Mercy Medical Center of Oshkosh, Inc., the cause was submitted on the brief of *John A. Nelson* and *Timothy W. Feeley* of *von Briesen, Purtell & Roper, S.C.*, of Milwaukee.

On behalf of defendant-respondent John B. McAndrew, the cause was submitted on the brief of *Steven J. Caulum, Suzanne E. Williams* and *David J. Pliner* of *Bell, Metzner, Gierhart & Moore, S.C.*, of Madison.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

SNYDER, P.J. Carol Ann Schaidler appeals from a judgment dismissing all of her claims against Mercy Medical Center of Oshkosh, Inc., and John B. McAndrew, M.D.[1] Schaidler now contests the trial court's grant of summary judgment on the following claims:[2] (1) violations of statutory provisions of the Mental Health Act, ch. 51, STATS., which were related to her treatment, and some of which were conceded by the defendants; (2) various claims of negligence against McAndrew and Mercy; and (3) claims of false imprisonment stemming from her inpatient treatment at Mercy.

Because we conclude that the trial court did not fully consider the conceded statutory violations of ch. 51, STATS., under § 51.61(7)(a) and (b), STATS., we reverse the grant of summary judgment as to the two violations conceded by the defendants. We also reverse the grant of summary judgment for three other alleged violations of ch. 51, for which neither side brought a motion for summary judgment. We remand these issues for further consideration in light of this decision. We affirm the trial court's grant of summary judgment to McAndrew and Mercy on all other issues.

Schaidler was admitted to an inpatient psychiatric ward at Mercy on an emergency detention order. A

---

[1] The trial court had granted summary judgment to McAndrew on all claims, and partial summary judgment to Mercy and another defendant, Rick Searles. A settlement agreement was then reached between Schaidler, Searles and Mercy, dismissing all remaining claims which had survived the court's grant of summary judgment.

[2] While there are multiple claims under each of these sections, we conclude that the appellate arguments fall under these three major groupings and will address Schaidler's arguments accordingly.

probable cause hearing was held as mandated by § 51.20(7)(a), STATS. Schaidler was represented by counsel at that hearing, and she stipulated to a "hold-open" disposition, which stated "[Plaintiff] to follow through w/ treating physician's recommendations, incl. in-patient stay @ Mercy - until can be placed at St. [Elizabeth]'s." Schaidler's counsel stated that there had been some "jurisdictional difficulty in making the [requested] transfer and if it's deemed to be in her best interests, we're going to transfer her to St. Elizabeth's Hospital . . . ." Plaintiff's counsel also noted that "arrangements have not been completed and that's the primary reason for her staying here at the present time . . . ."

Before Schaidler's transfer could be effectuated and in spite of her agreement to remain at Mercy as an inpatient, on four successive days following that hearing Schaidler requested that she be discharged and allowed to go home. In response to these requests, McAndrew, the attending physician, imposed a treatment director's hold in order to continue her inpatient treatment. *See* § 51.15(10), STATS.[3] As mandated by ch. 51, STATS., a hearing was timely held; at that time, the parties agreed that the treatment director's hold would be dismissed and Schaidler would be discharged.

Schaidler commenced this action approximately two years after her discharge. In her complaint she alleged seven distinct causes of action: (1) false imprisonment by Mercy; (2) violations of her § 51.61, STATS., patients rights by Mercy, McAndrew and a nursing assistant, Rick Searles; (3) assault and battery by Searles; (4) intentional infliction of emotional distress by Searles; (5) respondeat superior against Mercy for

---

[3] Section 51.15(10), STATS., has been amended by 1996 Wis. Act 175, § 4. The changes are not pertinent to our analysis.

the actions of Searles; (6) negligence on the part of Mercy; and (7) negligence on the part of McAndrew. The trial court granted summary judgment to McAndrew on all issues, and partial summary judgment to Mercy and Searles.[4] Schaidler, Mercy and Searles then entered into a stipulation and order dismissing Searles from the lawsuit and relieving Mercy of all liability attributable to Searles. Schaidler now appeals the trial court's grant of summary judgment.

Schaidler contends that the following issues were wrongly dismissed on summary judgment: her claims of violations of her rights under ch. 51, STATS., some of which were conceded by McAndrew and Mercy; and her claims of negligence (against McAndrew and Mercy) and false imprisonment (against Mercy). We will review Schaidler's appellate issues as we have delineated them above: ch. 51 violations, the negligence claims, and the false imprisonment claim.

We review decisions on summary judgment de novo, applying the same methodology as the trial court. *See Armstrong v. Milwaukee Mut. Ins. Co.,* 191 Wis. 2d 562, 568, 530 N.W.2d 12, 15 (Ct. App. 1995), *aff'd,* 202 Wis. 2d 258, 549 N.W.2d 723 (1996). We first examine the complaint to determine whether it states a claim and then the answer to determine whether it presents a material issue of fact. *See Jones v. Dane County,* 195 Wis. 2d 892, 912, 537 N.W.2d 74, 79 (Ct. App. 1995). If each does, we then examine the documents offered by the moving party to determine whether that party has

---

[4] The trial court preserved for trial the following claims: (1) a statutory violation of § 51.61(1)(s), STATS. (lack of privacy in toileting); (2) assault and battery (allegedly by Searles); (3) intentional infliction of emotional distress; and (4) respondeat superior against Mercy.

established a prima facie case for summary judgment. *See id.* If it has, we look to the opposing party's documents to determine whether any material facts are in dispute which would entitle the opposing party to a trial. *See id.*

### *Violations of Ch. 51, STATS.*

Section 51.61, STATS., is termed the "Patients Rights" statute and outlines numerous rights that are afforded mental health patients who are admitted to a treatment facility. *See* § 51.61(1). This section also provides for a right of redress for any patient who is denied any of these guaranteed rights. In such a case, the patient may bring an action pursuant to § 51.61(7). That subsection provides in relevant part:

> **(7)**(a) Any patient whose rights are protected under this section *who suffers damage as the result of the unlawful denial or violation of any of these rights* may bring an action against the person, including the state or any political subdivision thereof, which unlawfully denies or violates the right in question. The individual may recover any damages as may be proved, together with exemplary damages of not less than $100 for each violation and such costs and reasonable actual attorney fees as may be incurred.
>
> (b) Any patient whose rights are protected under this section may bring an action against any person, including the state or any political subdivision thereof, *which wilfully, knowingly and unlawfully denies or violates any of his or her rights protected under this section.* The patient may recover such damages as may be proved together with exemplary damages of not less than $500 nor more than $1,000 for each violation, together with costs and reasonable actual attorney fees. *It is not a*

*prerequisite to an action under this paragraph that the plaintiff suffer or be threatened with actual damages.* [Emphasis added.]

The trial court dismissed Schaidler's § 51.61 claims, concluding "even if there was technical violation that there was no medical testimony as to any kind of nexus between a violation of this particular statute and that plaintiff suffered harm under Section 7."

Our purpose when interpreting a statute is to determine the legislative intent. *See Kluth v. General Cas. Co.,* 178 Wis. 2d 808, 815, 505 N.W.2d 442, 445 (Ct. App. 1993). In so doing, we must first examine the statute's language and then resort to extrinsic aids only if the language is ambiguous. *See State v. Frey,* 178 Wis. 2d 729, 737, 505 N.W.2d 786, 790 (Ct. App. 1993). A statute is unambiguous if its words are subject to one applicable meaning in the eyes of a reasonably well-informed individual. *See Voss v. City of Middleton,* 162 Wis. 2d 737, 750, 470 N.W.2d 625, 630 (1991).

We conclude that by its plain language this subsection provides for two distinct causes of action. Under paragraph (a), a patient whose rights have been violated *and who has suffered damages as a result* may bring an action. The paragraph allows for a minimum recovery of $100 exemplary damages for each violation, with no upper cap, recovery of *any damages as may be proved,* and the recovery of costs and reasonable attorney's fees. *See* § 51.61(7)(a), STATS. In the alternative, paragraph (b) provides for a cause of action which *does not require* that a plaintiff suffer or be threatened with actual damages; however, the plaintiff suing under this paragraph must prove that the individual or institution "wilfully, knowingly and unlawfully" violated this section. *See* § 51.61(7)(b).

Schaidler specifically argues that Mercy and/or McAndrew violated her rights when they secluded and restrained her without a written physician's order contrary to § 51.61(1)(i)1, STATS.; maintained policies which permitted seclusion and restraint without proper physician's orders contrary to *id.*; failed to use less restrictive measures prior to placing her in seclusion and four-point restraints contrary to § 51.61(1)(e) (amended by 1995 Wis. Act 92, § 6) and (i)1; and failed to provide a written treatment plan in violation of § 51.20(8)(bg), STATS. We will begin with a discussion of Schaidler's first two arguments, as "technical" violations of these two are conceded by McAndrew and Mercy. Given those concessions, it is only necessary to ascertain the effect of those violations on the summary judgment analysis.[5]

Upon our review of the summary judgment record compiled in this case, it is apparent that Schaidler's counsel failed to specify whether Schaidler's claims were brought under § 51.61(7)(a) or (b), STATS. Opposing counsel for McAndrew and Mercy focused their responses to the conceded statutory violations on their belief that Schaidler had failed to show any injury. None of the parties directly considered the impact of paragraph (b), nor was this argued to the court.[6] The

---

[5] McAndrew and Mercy concede that they violated the following provisions of § 51.61(1)(i)1, STATS.:

> The authorization for emergency use of isolation or restraint shall be in writing, except that isolation or restraint may be authorized in emergencies for not more than one hour, after which time an appropriate order in writing shall be obtained . . . . Emergency isolation or restraint may not be continued for more than 24 hours without a new written order.

[6] In spite of the unartfully styled arguments presented to the court, we recognize that summary judgment is a drastic

trial court determined that because Schaidler had failed to show any damages stemming from the "technical violation[s]," she could not avoid the cross-motion for summary judgment brought by McAndrew and Mercy.

As earlier construed, § 51.61(7)(a) and (b), STATS., contemplates two separate and distinct means of bringing an action which alleges a statutory violation of ch. 51, STATS. Because the statutory violations regarding the timeliness of daily written physician orders was conceded by McAndrew and confirmed through an examination of pertinent written policies of Mercy, we conclude that the grant of summary judgment on these two issues must be reversed and remanded for further proceedings. While the trial court applied paragraph (7)(a) to Schaidler's claims and concluded that she had failed to show any damages sustained as a result of the violations, the trial court did not consider the application of paragraph (7)(b). This consideration will require Schaidler to present evidence that the violations of the statute were willful, knowing and unlawful. Upon receiving any additional evidence and argument from the parties, the trial court may properly make a deter-

remedy. *See Lecus v. American Mut. Ins. Co.,* 81 Wis. 2d 183, 189, 260 N.W.2d 241, 243 (1977). Because our review of the record reveals that Schaidler's counsel referred to § 51.61(7)(b), STATS., on at least one occasion and noted that this subsection provided for payment of penalties without proof of damages, we conclude that this issue is preserved for review. We nonetheless visit the lack of a cogent and clear presentation of this issue upon the plaintiff's counsel.

mination of the applicability of § 51.61(7)(b) to the issues of the conceded violations of the statute.[7]

We next consider Schaidler's claims that McAndrew and Mercy failed to use less-restrictive measures prior to the use of seclusion and four-point restraints, allegedly in violation of § 51.61(1)(e) and (i)1, STATS. One paragraph requires that a patient treated under this section "ha[s] the right to the least restrictive conditions necessary to achieve the purposes of admission . . . ." Section 51.61(1)(e). The other specifies that "[i]solation or restraint may be used only when less restrictive measures are ineffective or not feasible . . . ." Section 51.61(1)(i)1.

Schaidler claims that McAndrew conceded a violation of the applicable statute and directs us to McAndrew's deposition. However, while portions of McAndrew's deposition testimony were included in the record on appeal, the pages Schaidler focuses on are not part of the record.[8] It is the appellant's responsibility to insure that the record includes all documents pertinent to the appeal. *See Fiumefreddo v. McLean,* 174 Wis. 2d 10, 26, 496 N.W.2d 226, 232 (Ct. App.

---

[7] While we uphold the trial court's grant of summary judgment for McAndrew and Mercy on the conceded violations with respect to its consideration of § 51.61(7)(a), STATS., we take no position on the appropriate procedure in the trial court to address on remand the alleged violations of ch. 51, STATS., under paragraph (7)(b).

[8] The pages referred to by Schaidler's counsel are included in the appendix; however, under the Rules of Appellate Procedure, an appendix is to include "limited *portions of the record* essential to an understanding of the issues raised." *See* § 809.19 (2), STATS. (emphasis added). We will not here consider portions of deposition testimony which are not also part of the record.

1993); *see also* § 809.15(2), STATS. (the parties receive ten-day notice of the provisional contents of the record prior to its transmittal to the appellate court). When an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling. *See Fiumefreddo*, 174 Wis. 2d at 27, 496 N.W.2d at 232. We do so here and, on that ground, affirm the trial court's grant of summary judgment on this issue.[9] *See id.*

The final argument under this section which Schaidler advances is her claim that the respondents failed to provide a treatment plan for her in contravention of § 51.20(8)(bg), STATS. This section provides that when a settlement agreement is sought, it "shall be in writing, shall be approved by the court and shall include a treatment plan . . . ." *Id.* Schaidler claims that the settlement agreement reached at the probable cause hearing was inadequate in that it did not include the required treatment plan.

We first note that from the outset Schaidler did not want to be a patient at Mercy. However, because of the jurisdictional requirements of the police officers who transported her, she was taken there for evaluation. Once there, she was placed under an emergency detention order, and a probable cause hearing was set. At the time of that hearing, and in recognition of Schaidler's

---

[9] Nonetheless, it is apparent to us from our review of the portions of McAndrew's deposition that were included in the record that the staff at Mercy utilized a policy of graduated restrictions when such were necessitated by the behavior of a patient. Schaidler has failed to offer any proof that the actions of the staff with respect to her were not in keeping with this policy. The fact that patients are not "walked lockstep" through a precise hierarchy of seclusion and restraints is not evidence of statutory violations.

desire to be treated at another hospital as well as her ongoing need for inpatient care, an agreement was reached whereby Mercy agreed to transfer Schaidler to St. Elizabeth's as soon as the transfer could be arranged. It is clear from the hearing transcript that arrangements for the transfer were to be made through Schaidler's family and counsel. However, due to intervening factors that transfer was not accomplished.[10]

While the statute specifies that a treatment plan must be a part of any settlement agreement, the trial court found that including a treatment plan with the settlement agreement was ultimately the responsibility of the county corporation counsel. We agree. While a treatment plan must be written by a treating physician, the ultimate responsibility for requesting one and attaching it to the settlement agreement rests with counsel. We cannot visit this lack upon either Mercy or McAndrew. There was no statutory violation by either respondent, and we affirm the grant of summary judgment on this issue.

In addition to the above, the trial court also granted summary judgment to McAndrew and Mercy on the following claims: that Schaidler was forcibly administered medication in nonemergency situations, despite the absence of a court order allowing involun-

---

[10] An affidavit of Suzanne E. Williams, attorney for McAndrews, stated that she attended the deposition of the attorney who had represented Schaidler at the probable cause hearing. Williams stated in her affidavit:

> [Schaidler's attorney] and plaintiff's husband . . . made contact with individuals at St. Elizabeth's Hospital and attempted to arrange her transfer. However, they were unable to make arrangements for the transfer because the attending physicians to whom plaintiff wished her care transferred were not available.

tary treatment; that she was not given adequate access to toilet facilities; and that she was taunted by members of Mercy's staff during periods of restraint.[11] While McAndrew requested summary judgment as to the first two issues, neither Mercy nor Schaidler moved for summary judgment on these three claims.

Summary judgment should not be granted unless there are no material facts in dispute, no competing inferences that can arise and the law that controls the issue is clear. *See Lecus v. American Mut. Ins. Co.,* 81 Wis. 2d 183, 189, 260 N.W.2d 241, 243 (1977). Summary judgment is not to be a trial on affidavits and depositions. *See id.* Summary judgment is also placed before the court on the motion of a party. *See* § 802.08, STATS. In the instant case, neither the hospital nor Schaidler had brought a motion for summary judgment on these contested issues.

We affirm the grant of summary judgment for McAndrew on the above issues, concluding that Schaidler failed to put forth any conclusive evidence that material facts were in dispute. Schaidler directs us to her deposition in support of these claims against McAndrew; the limited portion of her deposition which was included in the record on appeal fails to implicate McAndrew. We therefore base our de novo review on the record that we have before us and assume that the missing material also supports the trial court's ruling. *See Fiumefreddo,* 174 Wis. 2d at 27, 496 N.W.2d at 232.

---

[11] This last claim had also implicated Searles, but because the stipulation agreement has dismissed all claims against him, Schaidler pursues this claim based only on the conduct of other staff members.

We conclude, however, that since neither Mercy nor Schaidler requested summary judgment on these issues, we must reverse the trial court's ruling as to Mercy and remand for further consideration. Because neither the factual bases for these three issues nor any defenses have been placed before the trial court by either party, they are not appropriate for summary judgment at this point.[12] *See Lecus,* 81 Wis. 2d at 189, 260 N.W.2d at 243.

In sum, we reverse the trial court's grant of summary judgment on the conceded violations of § 51.61, STATS., for a consideration of the impact of paragraph (7)(b). We affirm the grant of summary judgment on the issues of the alleged failure to employ less restrictive means than seclusion and four-point restraints, and on the failure to include a treatment plan with the settlement agreement. We affirm the trial court's grant of summary judgment to McAndrew on the other alleged violations of § 51.61, but reverse the summary judgment on these same issues as to Mercy and remand for consideration of the factual bases for those claims.

*Negligence Claims*

Schaidler next seeks reversal of the trial court's grant of summary judgment on her allegations of negligence. She claims that her cause of action for negligence lies in the respondents' failure to meet the applicable standards of care. The trial court concluded that "there is absolutely no showing of any kind of

---

[12] Because these three claims all involve alleged violations of § 51.61, STATS., the trial court must consider whether they are actionable by applying the requirements of § 51.61(7)(a) and (b).

causal nexus here between the negligence and causation of the damages of the plaintiff claiming she has had more psychotic episodes or psychological harm." Thus, the trial court found that Schaidler had failed to produce any evidence that linked her alleged injuries to any actions of McAndrew or Mercy.

■■■■■

Four elements must be present to sustain a cause of action for negligence: a duty of care, a breach of that duty, a causal connection between the conduct and the injury, and an actual loss or damage as a result. *See Nieuwendorp v. American Family Ins. Co.,* 191 Wis. 2d 462, 475, 529 N.W.2d 594, 599 (1995). Because the first two elements are not contested, we will initially review the grant of summary judgment on the basis of the causation element. " 'The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in producing the injury.' " *Id.* (quoted source omitted). The defendant's conduct is a substantial factor in producing the harm if it leads the trier of fact, as a reasonable person, to regard it as a cause. *See Young v. Professionals Ins. Co.,* 154 Wis. 2d 742, 748, 454 N.W.2d 24, 27 (Ct. App. 1990).

Schaidler contends that her expert witness "was deeply critical in his written report and deposition testimony of numerous aspects of MS. SCHAIDLER's treatment at MERCY." However, while Schaidler's expert offered an opinion that certain actions of McAndrew fell below a recognized standard of care, when asked whether he had an opinion as to whether Schaidler was damaged in any way as a result of any alleged negligent actions, he responded, "I can have no opinion about that. I don't know whether she was damaged or not."

Schaidler also maintains that she is not limited to evidence which "put[s] the first party's expert opinion at issue" but may also use other facts to undermine the moving party's expert. She seems to suggest that all she needs to do to create material issues of fact is to cast doubt on the expert opinions of the defendants. She then reasons that because McAndrew relied on his knowledge of his own "customary practice and the good judgment of the staff," rather than on his personal recollections in justifying his treatment methods, the defendants' experts' opinions are "based in large part on these same shaky foundations." Schaidler claims that it cannot be said that the opinions offered by defense experts are "uncontradicted and unimpeached" and that the trial court should have denied summary judgment on this basis.

Summary judgment may be granted if there is no genuine issue as to any material fact. *See Baxter v. DNR,* 165 Wis. 2d 298, 312, 477 N.W.2d 648, 654 (Ct. App. 1991). "Thus, the 'mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)). A factual issue is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (quoted source omitted).

No reasonable jury could return a verdict for Schaidler on the issue of negligence merely by discounting the expert testimony put forth by the defendants. Schaidler has failed to offer any evidence linking later psychotic episodes to the actions of either McAndrew or Mercy. Her own expert declined to state

an opinion. We conclude that Schaidler failed to raise a disputed issue of material fact and the trial court properly granted summary judgment for McAndrew and Mercy on the negligence claims.[13]

*False Imprisonment Claim*

Schaidler's final claim against Mercy is one for false imprisonment alleged as a result of the hospital's failure to transfer her to St. Elizabeth's.

An action for the tort of false imprisonment protects one's personal interest in freedom from restraint of movement. *See Herbst v. Wuennenberg,* 83 Wis. 2d 768, 774, 266 N.W.2d 391, 394 (1978). There is no cause of action unless the confinement is contrary to the will of the individual. *See id.* There is also no cause of action for false imprisonment if a defendant complies with the formal requirements of the law, so that the detention of the individual is legally authorized. *See Stern v. Thompson & Coates, Ltd.,* 185 Wis. 2d 220, 251, 517 N.W.2d 658, 670 (1994).

Schaidler contends that factual issues remain in dispute as to whether her confinement at Mercy was unlawful. She argues that once the settlement was reached, Mercy was under an obligation to have her transferred. The failure to do so has led to her claims of

---

[13] Schaidler disputes this, contending that she has produced "extensive evidence of the harm she suffered as a result of respondents' negligent conduct." She directs us to the deposition testimony of Dr. Jean Seay, her treating psychiatrist. While a portion of Seay's deposition is included in the appellant's appendix, it is not a part of the record on appeal. *See Fiumefreddo v. McLean,* 174 Wis. 2d 10, 27, 496 N.W.2d 226, 232 (Ct. App. 1993).

false imprisonment. Because we concluded earlier that responsibility for Schaidler's transfer rested with her family and counsel, we now conclude that there is no factual predicate to support her claim that she was unlawfully held. Mercy complied with all of the statutory hearings required by Schaidler's emergency detention. There is no legal basis for the false imprisonment claim and the trial court properly recognized that when it granted summary judgment to the respondents.

In conclusion, we affirm the trial court's grant of summary judgment for the respondents on the statutory requirements that the least restrictive means be used in treatment and that a treatment plan be attached to the hold-open settlement agreement. We also affirm the trial court's finding that summary judgment was proper on the issues of negligence and false imprisonment. We do, however, reverse the trial court's grant of summary judgment on the following issues: the conceded violations of § 51.61, STATS., for consideration of Schaidler's cause of action under paragraph (7)(b); and the grant of summary judgment to Mercy on the issues of the forcible administration of medication, inadequate access to toilet facilities, and taunting by staff members during periods of restraint. Because these issues were not properly before the court on motion for summary judgment by either Mercy or Schaidler, they must be given further consideration.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.